## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

VICKIE TAYLOR            )
                              )
        Plaintiff,        )
                              )
v.                         )      Civil Action No.: 04-758-BH-B
                              )
THE CITY OF DEMOPOLIS, et al.  )
                              )
        Defendants       )

## ORDER

This matter is before the Court on the Parties' Motions (Docs. 46 & 48) for Summary Judgment. Defendants filed their Motion (Doc. 46) seeking Summary Judgment as to all counts brought by Plaintiff. Plaintiff responded (Doc. 57) and Defendants, in turn, replied (Doc. 62) to Plaintiff's Response. In addition, Plaintiff filed her own Motion (Doc. 48) for Summary Judgment seeking disposition of her claims of False Imprisonment and Invasion of Privacy. Defendants submitted their Response (Doc. 53) and Plaintiff replied (Doc. 63). Based on analysis of the above cited documents and all relevant submitted evidence, the Court finds that Defendants' Motion (Doc. 46) for Summary Judgment is **due to be GRANTED**. Plaintiff's Motion (Doc. 48) for Summary Judgment is **due to be DENIED**.

**FACTS[1]**

1.      The City of Demopolis has a population of approximately 8,000 residents. (Def.'s Mot. Summ. J., Doc. 46, p. 2).

_____

[1] Unless otherwise noted, these facts are cited from Plaintiff's Undisputed Statement of Facts within her Memorandum of Law (Doc. 50) in Support of her Motion for Summary Judgment or her Statement of Undisputed Facts contained in her Response (Doc. 57) to Defendants' Motion for Summary Judgment.

2.      Plaintiff, Vickie Taylor, was first employed by the City of Demopolis in 1986 as an accounts payable clerk.

3.      In 1993, Taylor was asked by the Mayor of the City of Demopolis, Austin Caldwell, to begin taking the city clerk training courses in preparation for stepping into the position of City Clerk of the City of Demopolis (hereinafter, "City Clerk") when the current City Clerk retired.

4.      In May, 1996, Taylor was made City Clerk by the City Council of the City of Demopolis (hereinafter, "City Council") to fulfill the rest of the term of the previous City Clerk who had retired.  In November of that same year, Taylor was elected to the position of City Clerk by the City Council.

5.      Taylor maintained her position as City Clerk for Demopolis and was elected to serve another term as City Clerk in October 2000.

6.      On September 14, 2004, upon the retirement of Austin Caldwell, Cecil Williamson was elected as Mayor of Demopolis.  Mayor Williamson was sworn in on October 4, 2004.

7.      The City Council members were also sworn in on that evening.  The Council was comprised of Jack Cooley, Charles E. Jones, Woody Collins, Melvin Yelverton and Thomas Moore. Of the five Council members, Jack Cooley, Charles E. Jones and Melvin Yelverton were newly elected to their positions.  (Def.'s Mot. Summ. J., Doc. 46, p. 2).

8.      In September, 2004, after winning their respective elections, but before being sworn into office, the City Council members and Mayor-elect Williamson met at a private recreation facility known as Majo's.

9.      At this meeting, Plaintiff alleges that a decision was reached to not re-elect her as City Clerk.

10.     Immediately after being sworn in, Mayor Williamson and the City Council held an organizational meeting which was open to the public. (Defs.' Mot. Summ. J. at 3).

11.     During that meeting, Mayor Williamson and the Council went into executive session, which is closed to the public for the purpose of discussing an individual when that individual's good name and character are at issue.  They discussed three city offices: City Clerk, Fire Chief and Police Chief.  *Id*.

12.     The Mayor and Council decided at that time that they would postpone the election of these three officers as allowed under Alabama statute.  *Id*.

13.     On October 6, 2004, Councilman Charles Jones spoke with Plaintiff's husband.  He indicated to Mr. Taylor that Plaintiff should resign from her position as City Clerk so that she would not be embarrassed when the City Council did not re-elect her for that position the next night.  (Dep. of Jones, p. 12, 19-20).

14.     On the night of October 6, 2004, Plaintiff had a phone conversation with Mayor Williamson. Mayor Williamson told her to report to work as City Clerk the next morning.

15.     During this conversation, Plaintiff alleges Mayor Williamson promised her that she would remain in her position as City Clerk.

16.     On the morning of October 7, 2004, upon arriving at City Hall for work, Plaintiff inquired with Paula Rich, a city payroll clerk/revenue officer, as to how she could remove some of her personal Word documents off her computer.  (Pl.'s Dep., p. 112).

17.     This inquiry was relayed to Mayor Williamson who believed Plaintiff was deleting city documents.  (Dep. of Williamson, p. 119-121).

18.     After discussing the matter with the city attorney, it was decided that Plaintiff would be placed on administrative leave until the election took place that evening.  (Def.'s Mot.

Summ. J. at 4).

19.   Mayor Williamson then called Chief of Police and Public Safety Director for the City of Demopolis, Jeff Manuel, to escort Taylor from the building and advise her that she had been placed on administrative leave.  (*Id*.)

20.   At approximately 7:00 a.m., Manuel and a uniformed police officer, Paul Foster, knocked on the exterior door to Taylor's office at City Hall.

21.   Manuel informed Plaintiff that Mayor Williamson had directed him to remove to her from the premises and place her on administrative leave.

22.   Plaintiff was allowed to collect her personal belongings and she and Manuel left City Hall through a side door, before City Hall opened to the public.  (Def.'s Mot. Summ. J. at 4).

23.   After Plaintiff was escorted from City Hall on the morning of October 7, her neighbor, Dr. Earl Perret saw that she was upset.  Dr. Perret believed that Plaintiff was in a form of dysfunctional shock.

24.   On the evening of October 7, 2004, the City Council elected Paula Rich as the new City Clerk.  Plaintiff did not appear at this meeting.

25.   That evening, Paula Rich signed a document stating that she was elected "Acting City Clerk" by the City Council.

26.   Moments later, Rich also signed a letter tendering her resignation from the post of City Clerk and acknowledging that she only accepted the position for a maximum term of 90 days.  This letter is not dated.

27.   After Paula Rich was elected and qualified, the city then solicited applications from the public for another City Clerk.  (Def.'s Mot. Summ. J. at 4).

28.   On December 3, 2004, the City Council elected Carla Cowling as City Clerk to serve the

next four-year term.

29.    On October 7 and 8, 2004, Paula Rich, as acting City Clerk, prepared payroll checks for the City employees using the signature stamp of Vickie Taylor.

30.    Denise Barton, Accounts Payable Clerk for the City of Demopolis, also used Plaintiff's signature stamp without her permission to transact business on behalf of the city after October 7.

31.    Mayor Williamson also signed these checks endorsed with Plaintiff's signature, even though she knew Plaintiff was no longer a city employee.

32.    In 1996 and 2000, while City Clerk, Plaintiff was told by then mayor Austin Caldwell to keep track of her hours worked during the election period.  For the hours she worked in excess of 40 hours per week, Plaintiff was compensated with the overtime rate of time and one half.

33.    In 2004, prior to the election, Mayor Caldwell again told Plaintiff to keep track of her overtime hours during the election.

34.    While City Clerk, Plaintiff helped draft the City of Demopolis Personnel Policy Manual (hereinafter, "Personnel Manual").  The Personnel Manual was adopted as a city ordinance on August 15, 2002.

35.    On October 11, 2004, Plaintiff went to the Fitz-Gerald & Perret Clinic for medical treatment. Gayla Culpepper, P.R.N., evaluated Plaintiff's condition on that morning.   Upon examination, Culpepper prescribed three medications to Plaintiff to treat depression and anxiety.  In addition, Plaintiff received a prescription for a sleep aid from a medical doctor at the clinic.

36.    Culpepper also suggested that Plaintiff check herself into a mental care facility associated

with DCH Hospital in Tuscaloosa, Alabama. Plaintiff decided not to be checked into the facility.

37.     In January, 2005, Plaintiff applied for unemployment compensation benefits with the State of Alabama Department of Industrial Relations (hereinafter, "DIR").

38.     The City objected to Plaintiff receiving unemployment compensation because they believed her to be an elected official rather than an employee.

39.     The Alabama DIR rejected the City's contentions and awarded Plaintiff unemployment compensation benefits.

40.     Plaintiff filed this action before the Court on November 29, 2004. (Doc. 1).

41.     Plaintiff's Complaint asserts the following claims:

   a.     Violation of 42 U.S.C. §1983 for deprivation of rights under color of state law without due process. Plaintiff sues Mayor Williamson and the City Council in their official capacities

   b.     Violation of Fair Labor Standards Act (hereinafter, "FLSA"), specifically 29 U.S.C. §207, for failure to pay her for overtime work. Plaintiff asserts this claim against the City of Demopolis.

   c.     Violation of ERISA and COBRA under 29 U.S.C. §§1161-1169 for failure to provide her with a notice of her continuation rights under the city's group health insurance plan. Plaintiff submits this claim against the City of Demopolis.

   d.     Breach of Contract. Plaintiff alleges the Personnel Manual created an employment contract between the City of Demopolis and herself. Plaintiff asserts this claim against the City of Demopolis.

   e.     Breach of Employment Contract - Oral. Based on Plaintiff's allegation that Mayor

Williamson promised her that she would be City Clerk for four more years. Plaintiff proffers this claim against the City of Demopolis.

f.      Negligent Supervision based on the City Council's alleged negligence in allowing Mayor Williamson to terminate Plaintiff from her employment and utilize the police to remove Plaintiff from city property. Plaintiff submits this claim against the City of Demopolis.

g.      Tort of Outrage based upon Mayor Williamson's actions in having Plaintiff escorted from City Hall on October 7, 2004. Plaintiff sues Mayor Williamson in her individual capacity, as well as the City of Demopolis through the conduct of the City Council in ratifying Mayor Williamson's actions.

h.      Invasion of Privacy alleging misappropriation of Plaintiff's name and signature for the City's use without Plaintiff's permission. Plaintiff asserts this claim against the City of Demopolis.[2]

i.      Interference with a Business Relationship. Plaintiff alleges Defendants Williamson, Moore, Cooley, Collins, Yelverton and Jones took actions to interfere with her employment contract with the city. Plaintiff sues Defendants Williamson, Moore, Cooley, Collins, Yelverton and Jones in their individual capacities.

j.      False Imprisonment based on Jeff Manual's actions in escorting her from City Hall on the morning of October 7, 2004. Plaintiff sues the City of Demopolis and Mayor Williamson in both her individual and official capacities.

_____

[2] Plaintiff has also attempted to amend (Doc. 64) her Complaint to expand her invasion of privacy claim to allege false light invasion of privacy. Based on Plaintiff's failure to assert this claim within the court mandated period for amending pleadings and the fact that this particular type of invasion of privacy could not reasonably be inferred from Plaintiff's existing pleadings, the Court denied (Doc. 68) Plaintiff's Motion to Amend.

k.     Wrongful Termination.  Plaintiff alleges that she was terminated prior to when her statutorily mandated term had lapsed.  Plaintiff submits this claim against the City of Demopolis.

l.     Age Discrimination in violation of the Alabama Age Discrimination and Employment Act (hereinafter, "AADEA"), *Ala. Code* §§ 25-1-20 through 25-1-29. Plaintiff asserts this claim against the City of Demopolis.

(Am. Comp., Doc. 10).

42.   On October 5, 2005, Plaintiff voluntarily motioned (Doc. 54) to dismiss her claims alleging ERISA and COBRA violations, Breach of Employment Contract - Oral and Negligent Supervision. The Court complied (Doc. 61) and those claims have been dismissed with prejudice.

## LEGAL ANALYSIS

### Summary Judgment Standard

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).

An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case.  *Hickson Corp. v. N. Crossarm Co., Inc.,* 357 F.3d 1256, 1259 (11th Cir. 2004) (citing *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.*  A court must decide ""whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law." *Id*.

The moving party bears "the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party may discharge its "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial. *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991). To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must then come forward with evidence sufficient to withstand a directed verdict motion. *Fitzpatrick v. Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993).

On summary judgment, "the district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences ... in his favor." *Four Parcels*, 941 F.2d at 1428 (internal quotations and citations omitted).

### 42 U.S.C. 1983 Claims

Plaintiff alleges that her rights under 42 U.S.C. §1983 have been violated by Mayor Williamson and the City Council, in their official capacities,[3] based on her belief that she had a valid property interest in her position as City Clerk and that she was "terminated" without due process of

---

[3] When a municipal officer is sued in their official capacity under §1983, such a suit is, in actuality, a suit directly against the city that the officer represents. *Blyther v. City of Mobile*, 2005 WL 3019756 (S.D. Ala. 2005)(citing *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991)). Because suits against municipal officers sued in their official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official capacity suits against local government officials. *Id*.

law.  Plaintiff also contends that prior to being elected City Clerk she was an employee of the City of Demopolis and upon assuming the role as City Clerk she never relinquished any rights that she had as a city employee.  Based on this assumption, Plaintiff believes that once her tenure as City Clerk ended she was entitled to another position with the City of Demopolis.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  In the instant case, Plaintiff asserts that she is entitled to employment based upon Alabama statute and a contractual reliance on the City of Demopolis's Personnel Manual.

### Alabama Statute

Under Alabama statute, in cities of more than 6,000 inhabitants, city councils are to elect city clerks to hold office "until the next general election and until their successors are elected and qualified ... ."  *Ala. Code* § 11-43-3.  Plaintiff states that she is not claiming that she should have been permitted to serve as City Clerk in perpetuity, rather that she should have remained City Clerk until the City went through an application and interview process and elected and qualified a successor.  Plaintiff claims that such a process was not completed until December 3, 2004, almost two months after she was removed as City Clerk.  Therefore, she alleges that her removal was done prematurely and without due process of law.

When Plaintiff was elected to her second term as City Clerk in 2000, her employment at that position was only statutorily protected until the next general election and until a successor was elected and qualified.  On September 14, 2004, Williamson won the general election run-off to become mayor of Demopolis.  On October 7, 2004, Plaintiff was placed on administrative leave by

Mayor Williamson.[4]  That same evening, the City Council elected and qualified a new City Clerk, Paula Rich.  Based on these facts, the Court finds that once a new City Clerk was appointed on October 7, 2004, Plaintiff no longer had any cognizable right to her employment position as City Clerk.

Plaintiff proffers that the City's appointment of Paula Rich as an "acting" City Clerk was in violation of Alabama law and did not satisfy its obligation to retain Plaintiff as City Clerk until a "legitimate" City Clerk was elected.  However, the Alabama statute does not indicate that the term length of a subsequent City Clerk has any bearing on when the term of the previous clerk expires.  All the statute requires by its plain language is that a successor be elected and qualified.  The Court declines to infer any further statutory requirements that are not supported by the plain language of the law.  Once a successor was elected, temporary or otherwise, Plaintiff's term was over and she no longer had a property interest in that employment position.  Any contention as to the propriety of Ms. Rich's length of term is solely between her and the City of Demopolis.

**Contract**

Plaintiff further alleges that she had a right to continued employment as an employee of the City of Demopolis after her removal as City Clerk.  Plaintiff claims that prior to taking the job as City Clerk in 1996 she was an employee of the City and at no time did she ever resign or relinquish those rights.  Plaintiff asserts that because she is still a city employee, the City violated the terms of the Personnel Manual in terminating her.

From 1986-1996, Plaintiff worked as the accounts payable clerk for the City of Demopolis.

---

[4] The Court does not find that Mayor Williamson's decision to place Plaintiff on "administrative leave" for one day constitutes termination.  As Mayor Williamson stated in her deposition, such an action simply placed Plaintiff on leave *with* pay.  (Dep. of Williamson, p. 110).

In this position she was a typical city employee.  In 1996, Plaintiff was elected by the City Council to the position of City Clerk, a position with duties and responsibilities that were separate and distinct from that of her previous position as accounts payable clerk.  Once she became City Clerk, other employees were hired or assumed her duties as accounts payable clerk.  Currently, Denise Barton holds the position of accounts payable clerk.

The Court finds that the acceptance of the position of City Clerk and the discontinuance of her duties as accounts payable clerk are sufficient to demonstrate that she relinquished her position as a typical employee of the city.  Rather, she became a council-elected city officer whose employment status was then governed by Alabama statute.  *See Ala. Code* §§11-43-3; 11-43-81. Further, there is also no evidence that there was any contract with or promise to Plaintiff that she could return to another employment position at the conclusion of her terms as City Clerk.  There is no legal requirement that, absent a contract, a municipality must provide employment for outgoing officials who relinquished their previous government jobs to hold a higher position.  Therefore, the Court finds that Plaintiff has no cognizable legal right to a job with the City of Demopolis.

The Court holds that Defendants did not violate Alabama law in replacing Plaintiff as City Clerk.  The Court also finds that Plaintiff relinquished her position as a typical city employee when she was elected City Clerk and there is no evidence that Plaintiff was ever promised a position with the city once her terms as City Clerk ended.   In order to assert a Constitutionally protected property interest in her job, Plaintiff must have more than a unilaterally perceived entitlement to that position. Even taking the facts in light most favorable to Plaintiff, the Court cannot find that there has been any violation of her rights under 42 U.S.C. §1983.  Therefore, Defendants' Motion for Summary Judgment on Plaintiff's claim of violations of 42 U.S.C. §1983 is **due to be GRANTED**.

### *Breach of Employment Contract*

Plaintiff also alleges that the Personnel Manual was an employment contract that Defendants violated regarding her "termination."  She asserts that while City Clerk, she was a city employee and that the City's Personnel Manual created an employment contract governing her relationship with the city.  The Court does not disagree with Plaintiff's contention that a personnel manual can create a contract.  However, the Court does not find that the City of Demopolis's Personnel Manual applied to the position of City Clerk in regards to employment actions.

Plaintiff argues that the Alabama DIR has already determined the issue of whether she was an employee of the City of Demopolis during her term as City Clerk.  Based on the DIR's finding that she was an employee for the purpose of obtaining state unemployment benefits, Plaintiff asserts that Defendants are collaterally estopped from arguing that the terms of the Personnel Manual regarding termination do not apply to her.  Without delving into federal courts' applications of collateral estoppel, the Court emphasizes that the issue is not whether Plaintiff was simply an employee of the City of Demopolis.  Rather, the key distinction in this matter is whether Plaintiff is a typical city employee whose termination would be controlled by the terms of the Personnel Manual or a unique city official whose employment actions are governed by state statute.

Though not elected by the public through general election, as a mayor or city council member would be, a city clerk's election by the city council does differentiate them from a typical city employee.  Unlike most city employees, city clerk is a government office for which the state has deemed necessary certain provisions regarding terms of employment.  Most clearly at issue here is the legislation regarding the specific procedure for filling the position of City Clerk and establishment of term length.  *Ala. Code* §11-43-3.  Also, as an officer appointed by the city council, there is a specific procedure for removal prior to the conclusion of their term.  *Ala. Code* §11-43-81.

Any contract, or portion of a contract, that provides otherwise is in contravention of these laws and will not be given any weight by this Court.[5]   Therefore, because Alabama statute controls these aspects of a city clerk's employment, Plaintiff's claims that are brought pursuant to the Personnel Manual are without merit.  Defendants' Motion for Summary Judgment as to Plaintiff's claim of Breach of Employment Contract against the City of Demopolis is **due to be GRANTED**.

### *Intentional Interference With Business Relationship*

Plaintiff next claims that Defendant City Council members Moore, Cooley, Yelverton, Jones and Collins, as well as Mayor Williamson, are each individually liable for tortious interference with the business relationship Plaintiff had with the City of Demopolis.  More specifically, Plaintiff contends that when Defendants met at Majo's in September, 2004, they decided, prior to being sworn in as city officials, that Plaintiff would not retain her job as City Clerk.

Without addressing the issue of whether these officials are entitled to qualified immunity based on any actions they may have taken after being elected but before being sworn in, the Court finds that Plaintiff's claim does not survive summary judgment.  Under Alabama law, the first requirement necessary to support a claim of tortious interference with a business relationship is the existence of a contract.  *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*, 875 So.2d 1143, 1153 (Ala. 2003).  In support of her claim, Plaintiff asserts that the Personnel Manual served as her employment contract and these council members somehow interfered with the contract causing her to prematurely lose employment.  As the Court has already stated, as City Clerk, Plaintiff's terms

---

[5] This, however, does not necessarily mean that Plaintiff could not be subject to or benefit from other provisions within the Personnel Manual.  Rather, as the Manual's language states, "the sections, paragraphs, sentences, clauses, and phrases of these rules are severable, and if any phrase, clause, sentence, paragraph or section of these rules shall be declared unconstitutional, unenforceable or invalid by the valid judgment or decree of a court of competent jurisdiction, such unconstitutionality, unenforceability or invalidity shall not affect any of the remaining phrases, clauses, sentences, paragraphs and sections of these rules."  (Doc. 46-12 at 6).

of employment and method of removal were statutory, not contractual.  Therefore, any decisions Defendants may have made at their September, 2004 meeting a Majo's regarding Plaintiff's position as City Clerk did not affect any contractual terms Plaintiff had with the City of Demopolis. Defendants' Motion for Summary Judgment as to Plaintiff's claim of Intentional Interference with Business Relationship is **due to be GRANTED**.

### Wrongful Termination

Plaintiff also brings a state law claim against Defendant City of Demopolis for wrongful termination based on the allegation that she was terminated from employment without being afforded due process rights or provided notice and a hearing.  Though a cognizable tort under Alabama law, *See Hardric v. City of Stevenson*, 843 So. 2d 206, 209 (Ala. 2002), the Court does not find wrongful termination to be applicable in the instant case.  As we stated in our discussion of Plaintiff's §1983 claim, Defendants did not violate the due process rights of Plaintiff in selecting a new City Clerk pursuant to *Alabama Code* § 11-43-3.  Therefore, Defendants' Motion for Summary Judgment as it applies to Plaintiff's state law claim of wrongful termination is **due to be GRANTED**.

### Alabama ADEA

In her brief in Response (Doc. 57) to Defendants' Motion for Summary Judgment, Plaintiff contends that Defendant City of Demopolis violated the Alabama Age Discrimination in Employment Act (hereinafter, "AADEA") for failure to hire or promote based upon her age. However, in her Amended Complaint (Doc. 10), Plaintiff never mentions failure to hire/promote, rather only asserts a violation for wrongful termination.  In establishing a *prima facie* case of discrimination by virtue of termination, a plaintiff must prove: (1) Plaintiff was a member of a protected class; (2) Plaintiff was actually qualified for and applied for the position sought; (3)

Plaintiff was subject to an adverse employment action; (4) the position was filled by someone outside the protected class who was equally or less qualified for the position than Plaintiff. *Kelliher v. Veneman*, 313 F.3d 1270, 1275 (11th Cir. 2002).[6]  In the instant case, Plaintiff does not argue her claim of age discrimination based on wrongful termination.  Instead she erroneously devotes her briefing to a claim of failure to hire/promote which is not one of her presented claims.

Despite Plaintiff's failure to properly defend the claim presented, the Court has examined the issue of age discrimination based upon Plaintiff's alleged termination. The Court finds that Plaintiff cannot demonstrate a *prima facie* case because she has failed to show that she was subject to an adverse employment action.  Plaintiff was elected City Clerk in 1996 by a different mayor and a different city council.  In 2000, again a different city council elected her to another term at her position.  In 2004, however, a mayor and three new city council members came into office and, pursuant to their statutorily mandated discretion, elected and qualified a new city clerk.  At this point, under Alabama law, Plaintiff's term as City Clerk simply expired.  She was not demoted, fired or terminated, she was simply not re-elected by the incoming administration.  The Court does not find this to be an adverse employment action and, therefore, finds that Plaintiff cannot establish a *prima facie* case of wrongful termination in violation of the AADEA.  Defendants' Motion for Summary Judgment as it applies to Plaintiff's claims under the AADEA is **due to be GRANTED**.

---

[6] The Court notes that the standards governing AADEA cases are identical to those established for it federal counterpart, the ADEA.  *Bonham v. Mortgage Inc.*, 129 F. Supp. 2d 1315 (M.D. Ala. 2001).  The AADEA, in fact, specifically provides "the remedies, defenses, and statutes of limitations, under this article shall be the same as those authorized by the federal Age Discrimination in Employment Act," with the only noted exception being that plaintiffs are not required to pursue an administrative remedy prior to filing suit.  *Ala. Code* §25-1-29 (2005).

### *Tort of Outrage*

Plaintiff also claims Defendant Mayor Williamson, in her individual capacity,[7] has committed the tort of Outrage against her, based upon the Mayor's actions in removing her from her office on October 7, 2004. Plaintiff asserts that Mayor Williamson acted outside the scope of her duties as mayor by ordering the City's Public Safety Director, Jeff Manuel, and another officer to remove her from her office at City Hall. Taylor further states Manuel and the other officer were used to intimidate her to ensure her removal. This action was taken without warning and, allegedly, after Plaintiff was given assurances that she would remain as City Clerk. Mayor Williamson's actions, according to Taylor, were done intentionally, willfully, with malice and with complete disregard for the Plaintiff. Furthermore, Taylor contends, Williamson's behavior was outrageous in character and extreme in degree and completely unnecessary to accomplish the goal of terminating an employee.

Under Alabama law, in order for a plaintiff to recover on the tort of Outrage, it must be shown that the defendant's conduct: (1) was intentional or reckless, (2) was extreme and outrageous, (3) caused emotional distress so severe that no reasonable person could be expected to endure it. *American Road Serv. Co. v. Inmon*, 394 So.2d 361, 365 (Ala. 1980); *See also Stabler v. City of Mobile*, 844 So.2d 555, 560 (Ala. 2002); *Thomas v. BSE Indus. Contractors, Inc.*, 624 So.2d 1041, 1043 (Ala. 1993). These standards are not to be interpreted lightly and the Alabama Supreme Court has put a heavy burden on plaintiffs seeking recovery for this tort. "Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme

---

[7] Though initially also asserting this claim against the City of Demopolis for ratification of Mayor Williamson's actions, Plaintiff seems to concede, pursuant to *Alabama Code* §11-47-190 (2005), that municipalities are immune from liability for intentional torts. (Pl.'s Resp. Summ. J., Doc. 57, p. 34).

... .  By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Inmon*, 394 So.2d at 365.  To this end, in Alabama, the tort has only been recognized in three types of suits: wrongful conduct within the context of family burials, an insurance agent's coercing an insured into settling a claim and egregious sexual harassment. *Callens v. Jefferson County Nursing Home*, 769 So.2d 273, 281 (Ala. 2000).

In the instant case, the actions of Defendant Williamson do not fall into any of these categories.  Furthermore, even if the we were tempted to extend the bounds of applicability for the tort of Outrage, the facts and circumstances in question, even in a light most favorable to the Plaintiff, simply do not strike the Court as "so outrageous in character and extreme in degree to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."  *Inmon*, 394 So.2d at 365.  Therefore, the Court finds that Defendants' Motion for Summary Judgment, as it applies to Plaintiff's claim of Outrage is **due to be GRANTED**.

### *Fair Labor Standards Act*

During the summer of 2004, Plaintiff worked hours in excess of her regular work week in preparation for the upcoming election.  Plaintiff claims that she was told by then mayor, Austin Caldwell, that she would receive overtime pay for these excess hours.  Plaintiff has not been compensated as promised and seeks to recover under the Fair Labor Standards Act (hereinafter, "FLSA"), 29 U.S.C. §207 (1977).

Section 207 mandates that employees are to be compensated at the rate of time and one half for hours worked in excess of forty hours per week. 29 U.S.C. §207(a)(1) (1977).  However, in §213 of the FLSA an exception to the §207 overtime payment requirements is carved out for employees "in a bona fide executive, administrative, or professional capacity."  29 U.S.C. §213(a)(1) (1977).

In the instant case, Plaintiff does not seem to dispute her City Clerk position as being administrative or that she is subject to the exception. Rather, Plaintiff argues that she can still receive overtime pay, as she has in the past, despite being subject to the exception. The Court does not disagree. Plaintiff certainly can receive overtime pay and such payment will not affect her status as a salaried employee. *Aaron v. City of Wichita, Kansas*, 54 F.3d 652, 658 (10th Cir. 1995). However, being permitted to receive overtime pay is a far stretch from entitlement to such compensation. The question is not whether Plaintiff *could* be paid for her overtime, but whether Defendants are *required* to pay Plaintiff for her excess work. Plaintiff may have been paid for overtime work in the past and she may have even had an oral contract with the City, through Mayor Caldwell, for overtime compensation in 2004. However, her claim against the City asserts statutory entitlement to overtime compensation under the FLSA. Therefore, under §213 of the FLSA, the Court finds that the City is not entitled to pay her overtime compensation as she is an employee in an administrative role. Defendants' Motion for Summary Judgment, in regards to Plaintiff's claim under the FLSA, is **due to be GRANTED**.

### False Imprisonment

Plaintiff also asserts that Mayor Williamson, as an individual,[8] and the City are liable for false imprisonment based upon the mayor's actions of instructing Police Chief Manuel to remove Plaintiff from City Hall on October 7, 2004. Plaintiff and Defendants have filed opposing Motions for Summary Judgment on this particular issue.

Alabama's false imprisonment statute declares, "[f]alse imprisonment consists of the

---

[8] The Alabama Supreme Court has determined that false imprisonment is an intentional tort for which a municipality can be liable and is not entitled to municipal immunity pursuant to *Ala. Code* §11-47-190 (2005). *City of Bayou La Batre v. Robinson*, 785 So.2d 1128, 1131 (Ala. 2000); *Franklin v. City of Huntsville*, 670 So.2d 848 (Ala. 1995).

unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." *Ala. Code* §6-5-170 (2005). The Alabama Supreme Court has further held, "For there to be a false imprisonment, there must be some direct restraint of the person; however, it is not necessary that there be confinement in a jail or a prison. Any exercise of force, or the express or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment." *Crutcher v. Wendy's of North Alabama, Inc.*, 857 So.2d 82, 92 (Ala. 2003)(citing *Crown Central Petroleum Corp. v. Williams*, 679 So.2d 651, 653 (Ala. 1996)); *See also Big B, Inc. v. Cottingham*, 634 So.2d 999 (Ala.1993).

In the instant case, Plaintiff attempts to persuade the Court to view Mayor Williamson's actions as compelling Taylor to go where she does not wish to go or go somewhere against her will. This Court declines. At approximately 7 a.m. on October 7, 2005, prior to the opening of City Hall for the day, Chief Public Safety Officer and Chief of Police Jeff Manuel and another officer arrived at Plaintiff's office door. Upon instruction from Mayor Williamson, he instructed Taylor that she had been placed on administrative leave and must leave the building. He allowed her time to gather her personal belongings and escorted her, without physical contact, out the side door of the building.

Even taken in a light most favorable to Plaintiff, these actions simply do not amount to false imprisonment. Once Taylor was put on administrative leave by Mayor Williamson, she no longer had the right to be in a city office prior to its opening to the public. Plaintiff was never detained by Chief Manuel or the other officer. Plaintiff, in her Memorandum (Doc. 50) in support of her Motion for Summary Judgment, cites that "detention" has been defined as either detaining someone against their will or *forcing someone to somewhere against their will*. Here, Plaintiff was not forced to go somewhere in particular. She was simply forced to go *anywhere but the Clerk's office in City Hall*.

Defendants did not make her go to a particular place and remain there, rather they only made her leave city property when she no longer had a right to be there.  Plaintiff has presented no case law bolstering her contention that if police remove an individual from place in a non-physical fashion, but otherwise allow that individual to roam freely, that action amounts to false imprisonment. Without more support, the Court declines to stretch its interpretation of the existing law to envelop such a scenario.  Therefore, Plaintiff's Motion for Summary Judgment, as it applies to her claim of False Imprisonment is **due to be DENIED** and Defendant's Motion for Summary Judgment concerning the same issue is **due to be GRANTED**.

### *Invasion of Privacy*

Plaintiff's final claim against the City of Demopolis is for invasion of privacy based on misappropriation of Plaintiff's personality for commercial use.  As was the case with the False Imprisonment claim, both parties seek summary judgment on this issue.

The Restatement defines this particular form of invasion of privacy as:  "One who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of privacy." *Restatement (Second) of Torts* §652C (1977).  The Restatement further clarifies that even though some states have limited this tort solely to instances where the victim's name or likeness is used for commercial benefit, generally "[i]t applies also when the defendant makes use of the plaintiff's name or likeness for his own purposes and benefit, even though the use is not a commercial one, and even though the benefit sought to be obtained is not a pecuniary one." *Id*. at cmt. (b).  Nevertheless,

> No one has the right to object merely because his name or appearance is brought before the public, since neither is in any way a private matter and both are open to public observation.  It is only when the publicity is given for the purpose of appropriating to the defendant's benefit the commercial *or other value associated with the name* or the likeness that the right of privacy is invaded.

*Id*. at cmt. (d)(emphasis added); *Minnifield v. Ashcraft*, 903 So.2d 818, 822 (Ala. Civ. App.

2004)(citing *Schifano v. Greene County Greyhound Park, Inc.*, 624 So.2d 178,181 (Ala. 1993)).

Even if a plaintiff cannot cite commercial damage to the value of their identity, they may still seek a remedy under this type of tort action. The Eleventh Circuit, applying Alabama law, has stated, "The appropriation type of invasion of privacy, like all privacy rights, centers on damage to human dignity. Damages are usually measured by "mental distress" – some bruising of the human psyche." *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1446 (11th Cir. 1998). Furthermore, the Alabama Court of Civil Appeals has clearly noted, "[w]e cannot say that Alabama's commercial-appropriation invasion-of-privacy tort bases liability solely on commercial rather than psychological interests ... [f]or a private person, psychological interests would likely be the main concern resulting from the appropriation of his or her likeness ... ." *Minnefield*, 903 So.2d at 824.

In the instant case, it is undisputed that the City intentionally utilized a stamp of Plaintiff's signature, after she was put on administrative leave and after her term as City Clerk had expired, without Plaintiff's permission. Though Defendants claim the use of the stamp was not done maliciously, the Court finds that there can be no dispute that the City did intentionally use the stamp to endorse checks and carry out other city business. Since neither side differs as to the facts surrounding this claim, the Court need only make a legal determination as to whether the elements establishing liability for this tort are present.

Defendants submit that they derived no benefit from the use of the stamp and, therefore, cannot be liable for this tort. The Court disagrees. The City used the stamp so that they could conduct their business in Taylor's absence. Though this was not necessarily a pecuniary benefit, it clearly was beneficial to them. If, as Defendants have stated, the stamp used had no distinct value associated with it, then there would not have been any need to use it at all. Clearly, based upon authority that was vested in her as City Clerk, Vickie Taylor's signature had value for the City of

Demopolis.  By using the stamp of Plaintiff's signature and tapping into the value that derived from

it  without her permission, Defendants misappropriated Plaintiff's name or likeness for their own

benefit.

      However, though Defendants misappropriated Vickie Taylor's signature, Plaintiff has failed

to make a showing as to any "mental distress" that may have been caused by Defendants' actions.

Based solely on Defendants' minimal transitional use of Plaintiff's signature for the routine tasks

of endorsing checks and transferring money, the Court cannot find that injury to Plaintiff's dignity

or psyche could be anything more than *de minimis*.  Therefore, the Court finds that Plaintiff's

Motion for Summary Judgment, as it applies to her claim of invasion of privacy, is **due to be**

**DENIED**.  Defendants' Motion for Summary Judgment as to this claim is **due to be GRANTED**.


**CONCLUSION**

      Based on the above analysis, the Court finds that Defendants' Motion (Doc. 46) for Summary

Judgment is **hereby GRANTED**.  The Court also finds that Plaintiff's Motion (Doc. 48) for

Summary Judgment is **hereby DENIED**.

      **So ORDERED**, this 6th day of December, 2005.


                           _____s/ W. B. Hand_____
                           SENIOR DISTRICT JUDGE